UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN PRESTENBACH, ET AL. | CIVIL ACTION |
| VERSUS | NO. 08-4109 |
| LAFOURCHE PARISH DETENTION CENTER, CRAIG WEBRE, and LAFOURCHE PARISH SHERIFF'S OFFICE | SECTION "N" (4) |

### ORDER and REASONS

Before the Court is the Motion for Dismissal Pursuant to Rule 12(b)(6) (Rec. Doc. 9), filed by Defendant Craig Webre. The motion is opposed. After reviewing the pleadings, the applicable law, and the memoranda from the parties, the Court rules as set forth herein.

### I. BACKGROUND

This suit is brought pursuant to 42 U.S.C. §§ 1983 and 1985 and the Louisiana wrongful death statute, LA. CIV. CODE art. 2315.2, and arises from the death of Jessica Prestenbach while she was in custody at the LaFourche Parish Detention Center on January 14, 2008. Prestenbach had been involved in a minor auto collision that day, and while investigating the accident, the LaFourche police discovered a warrant for Prestenbach's arrest in neighboring Terrebonne Parish. Prestenbach was detained awaiting transfer to Terrebonne Parish, but while in custody she died in her cell, allegedly by hanging.

Prestenbach's husband filed the instant suit on behalf of himself and Prestenbach's minor children on August 6, 2008. Prestenbach claims that all three defendants were acting under color of

the laws and regulations of the State of Louisiana and the LaFourche Parish Sheriff's Office. Compl. at ¶VIII. Plaintiffs claim that

> The defendants had policies and customs in place that enabled its officers and employees to act with deliberate, [*sic*] indifference to the constitutional rights of individuals. There has been a repeated and customary practice of non-supervision of inmates in the defendant's custody and control. This action is done by the deliberate failing to adequately supervise, discipline, or train officers and/or employees.

*Id.* Plaintiffs claim that the exercise of the customs and policies violated Prestenbach's right to be free of "unauthorized seizure of her person and the right to medical care for injuries received while in custody." *Id.* at ¶VIIII.

## II. ANALYSIS

### A. Distinguishing Webre's Claims

Unfortunately, Plaintiffs' admission that the complaint in this case is "not the most artfully constructed" applies to all the pleadings. Opp. at 2. Because Webre's motion, though styled as a Rule 12(b)(6) motion to dismiss for failure to state a claim, actually makes a welter of different allegations, with no apparent organization or grouping of similar claims, the Court's first task is to understand the arguments that are being made so it can apply the proper standard. Liberally construing the motion, the Court has identified a few main claims:

1. That the LaFourche Parish Detention Center and the LaFourche Parish Sheriff's Office are not legal entities and thus must be dismissed from this suit. Mot. at 1-2.

2. That Plaintiffs' allegations about Defendants' conduct are conclusory and unsupported by factual assertions, and thus Plaintiffs fail to state a claim under § 1983. *Id.* at 3-6; 15-17; 20-21.

3. That even if deputies at the detention center violated Prestenbach's constitutional rights, a sheriff cannot be held vicariously liable for constitutional or statutory violations by deputies under his command. *Id.* at 7-8.

      4. That Plaintiffs have not adequately alleged a conspiracy to deprive Prestenbach of her constitutional or statutory rights pursuant to § 1985. *Id.* at 17-19.

Additionally, though Defendant (surprisingly) does not explicitly plead a qualified immunity defense, he does argue that Plaintiffs have not adequately alleged that Webre engaged in conduct that violated an established constitutional right of Prestenbach's. *See Id.* at 8-14. This constitutes a fifth major argument in Defendant's motion.

**B.**    **Standard of Review on a 12(b)(6) Motion**

A district court cannot dismiss a complaint, or any part of it, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowry v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1997). "However, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . .'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)) (alteration in original). "'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." *Id.* (quoting *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1994)). Moreover, "'legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Blackburn*, 42 F.3d at 931

(quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotation and citation omitted).

**C.     Webre's First Through Fourth Arguments**

i. Detention Center and Sheriff's Office must be dismissed

Defendant argues that the Lafourche Parish Detention Center is not a legal entity, but is merely a facility owned by the Lafourche Parish Council, and as such is not liable to suit. Mot. at 1. He further argues that the Lafourche Parish Sheriff's Office is similarly not a legal entity liable to suit. *Id.* at 2. In response, Plaintiffs say merely that the "intent [of the complaint] is clear: to hold the owner (the Lafourche Parish Council) and operator (Craig Webre . . .) of the Lafourche Parish Detention Center liable . . . ." The Court construes this statement as a stipulation to the arguments raised by Plaintiffs as to the detention center and the sheriff's office. Accordingly, to this extent the motion is granted and these Defendants dismissed from the suit.

ii. Plaintiffs fail to state a claim under § 1983

Webre argues that Plaintiffs' allegations about Webre's conduct are conclusory and unsupported by any factual assertion, and thus fail to state a claim under § 1983. The bulk of Plaintiffs' allegations are found in ¶VIII of the complaint and are quoted above. These allegations sufficiently plead a connection between Webre's action and the alleged constitutional violations to state a claim under § 1983. Webre had "policies and customs in place." Compl. at ¶VIII. These policies were "non-supervision of inmates" and "deliberate fail[ure] to adequately supervise,

4

discipline, or train officers and/or employees." *Id.* These policies enabled Webre's officers and employees "to act with deliberate, [*sic*] indifference to the constitutional rights of individuals." *Id.* This deliberate indifference caused the constitutional violations complained of in the instant case. *Id.* at ¶VIII. In short, the plaintiffs have alleged that Webre implemented policies that resulted in plaintiffs' constitutional injuries. While Plaintiffs will eventually bear the burden of proving that these policies existed, this suffices to state a claim under § 1983, and to this extent the motion is denied.

### iii. Webre not vicariously liable

Webre claims that even if constitutional violations were committed, a sheriff cannot be held vicariously liable for constitutional or statutory violations by deputies under his command. Mot. at 7-8. This contention is true. *See, e.g.*, *Taylor v. City of Alexandria*, 261 So.2d 92, 93 (La. App. 1972) (under Louisiana law, police chief not vicariously liable for acts of subordinates). However, Plaintiffs' complaint does not allege vicarious liability, but rather alleges that Webre had a policy or custom of non-supervision and failure to supervise, which caused the alleged constitutional injury. Compl. at ¶VIII. To this extent, the motion is denied as moot.

### iv. Conspiracy under § 1985

Webre also claims that Plaintiffs have failed to adequately allege a conspiracy to deprive Prestenbach of her rights under § 1985. Although Plaintiffs do not specifically allege the subsection of § 1985 under which this claim is brought, § 1985(3) is the section that deals with depriving persons of rights or privileges. Section 1985(3) is directed at conspiracies to interfere with civil rights. *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000). To state a claim under § 1985(3), Plaintiffs "must allege that two or more persons conspired to directly, or indirectly,

5

deprive him of the equal protection of the laws or equal privileges and immunities under the laws." *Newsome v. E.E.O.C.*, 301 F.3d 227, 232 (5th Cir. 2002). Further, to state a § 1985(3) claim, Plaintiffs "must allege that the conspirators were motived by [Prestenbach's] race." *Id*. Plaintiffs have made no such allegation, and therefore the motion is granted as to the § 1985 claim.

**D. Webre's Fifth Argument**

Finally, Webre moves to dismiss Plaintiffs' claims on the grounds that they cannot point to an established constitutional or statutory right that Webre violated. Mot. at 8-14. On its face, this argument fails, since Plaintiffs have alleged violations of the constitutional rights against "unauthorized seizure of her person and the right to medical care for injuries received while in custody." What gives the Court pause, however, is that Webre has invoked the language of qualified immunity without actually pleading qualified immunity, a phrase that never appears in the instant motion.

In *Harlow v. Fitzgerald*, the United States Supreme Court established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (citation omitted). Because qualified immunity constitutes an immunity from a lawsuit, rather than a mere defense to liability, the defense is intended to give public officials immunity from disruptive and burdensome pretrial matters such as discovery. *Id.* Therefore, adjudication of qualified immunity

claims should occur "'at the earliest possible state in litigation.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A claim of qualified immunity requires this Court to engage in a well-established two-step inquiry:

> First, we must determine whether a public official's conduct deprived a § 1983 plaintiff of a "clearly established" constitutional or statutory right. The constitutional right must be sufficiently clear to put a reasonable [public official] on notice that certain conduct violates that right. The Supreme Court has warned against vague or general assertions of constitutional rights and has required a § 1983 plaintiff to state with specificity the constitutional right that has been allegedly violated–otherwise, liability could be imposed in every case.
> . . .
> Second, a public official may successfully assert the defense of qualified immunity even though the official violates a person's civil rights, provided the official's conduct was objectively reasonable. Whether an official's conduct is objectively reasonable depends upon the circumstances confronting the official as well as clearly established law in effect at the time of the official's actions. The subjective intent of the public official is irrelevant, and the official's knowledge of the relevant law need not rise to the level of a constitutional scholar.

*Sanchez v. Swyden*, 139 F.3d 464, 466-67 (5th Cir. 1998). The Fifth Circuit has determined that when a plaintiff sues a public official pursuant to § 1983, a district court must insist on a "heightened pleading" by the plaintiff. *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996). First, a plaintiff must file "a short and plain statement of his complaint, a complaint that rests on more than conclusions alone." *Id.* (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). Second, "the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." *Schultea*, 47 F.3d at 1434. Defining the contours of the procedure in qualified immunity cases, the Fifth Circuit stated:

> Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist. The

7

> district court may ban discovery at this threshold pleading stage and may limit any necessary discovery to the defense of qualified immunity. The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts. Even if such limited discovery is allowed, at its end, the court can again determine whether the case can proceed and consider any motions for summary judgment under Rule 56.

*Id*. at 1434. A reply to an assertion of qualified immunity must contain "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes*, 168 F.3d at 161. Additionally, a reply to a defendant's assertion of qualified immunity must "fairly engage its allegations." *Schultea*, 47 F.3d at 1433. Procedurally, the *Schultea* reply to a defendant's assertion of qualified immunity is grounded in FED. R. CIV. P. 7, which allows a court to order a reply to an answer affirmatively pleading the defense of qualified immunity. *Id.* at 1433.

In this case, there has not even been an explicit qualified immunity defense raised, much less an answer to which the Court can order Plaintiffs to make a *Schultea* reply. However, given the importance of the qualified immunity defense and the Fifth Circuit's clear concern in *Schultea* that the defense not be defeated by mere allegations, the Court is unwilling to deny Webre's motion without requiring more specific allegations from Plaintiffs as to Webre's alleged constitutional violations. Therefore, the Court will construe that portion of the instant motion dealing with alleged violations of established constitutional rights as raising a qualified immunity defense pursuant to Rule 12(b)(6). Plaintiffs will file a *Schultea* reply within 10 days of the date of this Order, pleading specific allegations of fact as to conduct that violated Prestenbach's established constitutional rights.

### III. CONCLUSION

In conclusion, the instant motion is **GRANTED IN PART** and **DENIED IN PART**. Specifically, **IT IS ORDERED** that the motion is:

1. **GRANTED** as to Defendants Lafourche Parish Detention Center and Lafourche Parish Sheriff's Office, which Defendants are **DISMISSED**;

2. **DENIED** as to Plaintiffs' failure to state a claim under § 1983;

3. **DENIED** as to vicarious liability;

4. **GRANTED** as to Plaintiffs' claims under § 1985.

Additionally, **IT IS ORDERED** that Plaintiff will file a *Schultea* reply within 10 days of the date of this Order, pleading specific allegations of fact as to conduct that violated Prestenbach's established constitutional rights.

New Orleans, Louisiana, this 9th day of December 2008.

KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE